THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN HUNT *et al.* Plaintiffs in Error.

*Opinion filed October 25, 1911.*

1. CRIMINAL LAW—*indictment for larceny of money should describe the money taken.* An indictment for the larceny of money should describe the coins or bills taken, if such description is or may be known to the grand jury; and it is only when the grand jury is unable to obtain a description of the money that it may be described in the indictment simply by giving its value "in good and lawful money of the United States."

2. SAME—*a conviction cannot be had if allegation that the description of the money is unknown is false.* A conviction for the larceny of money under an indictment alleging that the particular description of the money was unknown to the grand jurors cannot be sustained, where the person from whom the money was taken testifies positively to the number and denominations of the bills stolen and testifies that he gave such description to the grand jurors; but the defendant may be tried under a new indictment properly describing the money stolen.

CARTER, C. J., and HAND, J., dissenting.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

H. A. EVANS, (JOHN M. HERBERT, of counsel,) for plaintiffs in error.

W. H. STEAD, Attorney General, and ISAAC K. LEVY, State's Attorney, (S. F. SCHECTER, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Plaintiffs in error, John Hunt and Omer Rose, were convicted in the Jackson county circuit court of grand larceny and the value of the property stolen was fixed at $55.50 by the verdict of the jury. After overruling motions for a new trial and in arrest of judgment the court sentenced plaintiffs in error to imprisonment in the penitentiary. They have sued out a writ of error and insist that the judgment should be reversed for several reasons. In the view that we take of the case it will only be necessary to consider one point.

The indictment is in three counts, the first of which charges robbery by putting George Stock in bodily fear and by then and there feloniously and violently, by force, stealing, taking and carrying away from the person of the said George Stock one pocket-book of the value of one dollar and "$55 of good and lawful money of the United States of America of the value of, to-wit, $55, said personal property and money being of the aggregate value of, to-wit, $56, a more particular description of said personal property and money being to these grand jurors unknown." The second count charges robbery by intimidation, and charges the theft of property described in the same manner as in the first count, and alleges that a more particular description of said personal property and money is to the grand jurors unknown. The third count charges the larceny of a pocket-book of the value of one dollar and "$55 of good and lawful money of the United States of America of the value of $55," and alleges, as in the other two counts, that "a more particular description of said personal goods, chattels and money is to the grand jurors unknown." The court below directed a verdict of not guilty upon the first

and second counts of the indictment. The judgment of
guilty must therefore rest upon the third count, alone.

On the trial before the jury, George Stock, who was the
owner of the pocket-book and money alleged to have been
stolen, testified that it was paper money in the pocket-book,
and said: . "The bills were five tens and a five. I testified
before the grand jury that there were five ten-dollar bills
and a five-dollar bill. No, sir; there were not fifty-five
one-dollar bills, nor fifty-five silver dollars, nor fifty-five
gold dollars, but there were five ten-dollar bills and a five-
dollar bill." No member of the grand jury or other witness
gave any testimony tending to prove that the grand jury
was unable to obtain any other or more particular descrip-
tion of the money alleged to have been stolen than that set
out in the indictment.

The situation presented by this record is as follows:
The indictment charges plaintiffs in error with the larceny
of $55 of good and lawful money of the United States of
the value of $55, and the excuse stated in the indictment
for failing to describe the property stolen is, that a more
particular description of the money "was to the grand jur-
ors unknown." The uncontradicted evidence is that a more
particular description of the money alleged to have been
stolen was given to the grand jury by the prosecuting wit-
ness. Under this showing of the record plaintiffs in error
contend that they were erroneously convicted and that the
court should have granted them a new trial. This assign-
ment of error presents the only question which requires our
consideration.

A common law indictment for the larceny of money
which merely describes the subject of the larceny as a cer-
tain number of dollars in lawful money of the government,
of a stated value, would be too indefinite and uncertain,
and should, according to the great weight of authority, be
quashed on motion. Bishop, in his work on Criminal Pro-
cedure, in section 703 of volume 2, says that "coin should

be described by the number of pieces and their respective denominations and kinds. For example, it is good to say 'two five-franc pieces silver coin of France, of the value, etc., and seven half-dollars silver coin of the United States, of the value, etc., current money.'" In one case Bishop further says that the expression "sixty dollars of the current gold coin of the United States" was held sufficient by construing it to mean "sixty one-dollar gold pieces." The case referred to by Bishop is *McKane* v. *State,* 11 Ind. 195. Speaking of this case, Mr. Bishop says that it is pushing the rule to construe ambiguities in a way sustaining the indictment quite as far as in reason it will bear. Summarizing the result of the cases on this subject the author above quoted from lays down the rule as follows: "On the other hand, simply to describe the subject of the larceny as so many dollars, or so many dollars in money, without further particularization, is by all deemed ill." In support of this rule a number of authorities are cited in the note.

The rule is undoubtedly well established that an indictment for the larceny of money should contain such a description as to call to mind the particular coins or bills and thus identify the things stolen. The reasons for this requirement are concisely and accurately stated by the Supreme Court of Michigan in *Merwin* v. *People,* 26 Mich. 298, as follows: "Among the objects to be accomplished by the mode of setting forth the criminal charge, with its essential and descriptive circumstances, and especially the description of property stolen, the following have always been recognized as fundamental: First, to identify the particular transaction charged as criminal, so that the defendant shall not be liable to be put upon his trial for an offense different from that for which the grand jury have found the bill, or (when under our law the information is substituted) different from that to which the person verifying the information intended to swear; second, that the defendant's conviction or acquittal may inure to his subsequent pro-

tection should he be again prosecuted for the same offense, (,and, though the identity may be shown by evidence *aliunde,* where it does not clearly appear from the record, yet it would be more difficult for the defendant to show such identity where no specific description is given in the indictment;) third, to inform the defendant of the particular transaction constituting the offense for which he is to be tried, that he may be able to prepare for his defense; and fourth, to enable the court, looking at the record after the conviction, to decide whether the facts as charged are sufficient to support the conviction and warrant the judgment."

The rule above laid down applies to all cases of larceny where the description of the property is or may be known to the grand jury. It often happens, however, that persons suffering from a theft are unable to particularly describe the stolen money. In such case the strictness of the rule is relaxed and the grand jury is permitted to describe the property as particularly as the testimony of the witnesses will permit and then allege that further particulars are to the grand jurors unknown. (*Brown* v. *People,* 29 Mich. 232; *Hamilton* v. *State,* 60 Ind. 193; *Ware* v. *State,* 2 Tex. Crim. App. 547; 2 Bishop on Crim. Proc. sec. 705.) The relaxation of the rule in this regard results from necessity, and cannot be invoked where the particulars omitted from the indictment were within the knowledge of the grand jury or might have been ascertained by the exercise of ordinary diligence. In Bishop's Criminal Procedure (vol. 1, sec. 549,) it is said: "If the grand jurors refuse to learn the name when they might, their ignorance of it thus willfully produced, proceeding from no necessity, creates none; and if they lay it as unknown, proof of the facts at the trial will show the allegation to be unauthorized and there can be no valid conviction thereon."

Where matters which ought to be stated in the indictment are omitted and the excuse is stated that such facts were unknown to the grand jurors, the truthfulness of the

excuse given is put in issue by the plea of not guilty and the burden is upon the State to prove such allegation. (*Cameron* v. *State,* 13 Ark. 712; *Reed* v. *State,* 16 id. 499; *Regina* v. *Campbell,* 1 C. & K. 82; *State* v. *Stowe,* 132 Mo. 199; *Merwin* v. *People, supra.*) The answer of the State to this point is that the proof merely presents a matter of variance, and that plaintiffs in error are not in a position to take advantage of the point as such. In our opinion this is not a question of variance. The State simply failed to prove one essential averment of this indictment, viz., that a more particular description of the money alleged to have been stolen was unknown to the grand jurors. What the result is of this error is not so clear under the authorities. Some of the authorities hold that in a situation such as is here presented the defendant is entitled to his discharge. We, however, incline to the view expressed by Wharton in his work on Criminal Pleading and Practice, (secs. 112, 113,) that the plaintiffs in error should be discharged from further prosecution under this indictment but that they may be indicted and tried under a new indictment properly framed, and this seems to be the view adopted by the Supreme Court of Missouri in a similar case. *State* v. *Stowe, supra.*

Plaintiffs in error make some complaint of certain instructions, but since the case will be tried, if tried at all, under an indictment framed upon a theory to which the instructions complained of will not apply, we do not deem it necessary to discuss the instructions.

For the error indicated the judgment of the circuit court of Jackson county is reversed and the cause remanded.

*Reversed and remanded.*

CARTER, C. J., and HAND, J., dissenting.